UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS PRICE,

      Plaintiff,                               Civil Action No.:
                                              Honorable

v

DETROIT TRANPORTATION
CORPORATION,

      Defendants.

_____

JAMES B. RASOR  (P 43476)
ANDREW J. LAURILA  (P 78880)
Rasor Law Firm, PLLC
Attorneys for Plaintiff
201 E. Fourth Street
Royal Oak, MI  48067
248/543-9000 // 248/543-9050 fax
_____

## COMPLAINT & JURY DEMAND

NOW COMES PLAINTIFF, THOMAS PRICE, by and through his attorneys, Rasor Law Firm, PLLC, and for his Complaint against Defendant, Detroit Transportation Company, states as follows:

## GENERAL ALLEGATIONS

### Parties

1.    At all relevant times, Plaintiff, Thomas Price ("Price"), was a resident of the City of Warren, County of Wayne, State of Michigan.

2.      Defendant, Detroit Transportation Corporation (hereinafter "DTC"), is an agency of the City of Detroit and a Michigan political subdivision, duly organized in the City of Detroit, County of Wayne, State of Michigan, and is the owner and operator of the Detroit People Mover.

3.      At all material times, Plaintiff was an employee of Defendant Detroit Transportation Company.

4.      This lawsuit arises out of events occurring within the City of Detroit, County of Wayne, and State of Michigan.

## Jurisdiction and Venue

5.      This cause of action involves violations of Plaintiff's civil rights, as secured by the United States and Michigan Constitutions, and is brought pursuant to the Americans with Disabilities Act ("ADA"), the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"), and the Elliott-Larsen Civil Rights Act ("ELCRA").

6.      This Court has jurisdiction over the claims arising under federal law pursuant to 28 U.S.C. §§ 1331, 1343. This Court has supplemental jurisdiction over the claims arising under state law pursuant to 28 U.S.C. § 1367.

7.      Defendant DTC is a covered entity, which includes "employer[s]" within the meaning of the ADA, 42 USC §12111(2), (5), (7), and an "employer" within the meaning of the PWDCRA, MCL §37.1201(b) and the ELCRA, M.C.L. § 37.2201(a).

8. The amount in controversy exceeds $75,000.00 exclusive of costs, interest, and attorney fees, and jurisdiction is otherwise proper in this Court.

9. Venue is appropriate in this Court pursuant to 28 USC §1391(b), as this cause of action arises out of occurrences that took place within this District in the County of Wayne and Defendant transacts and conducts business within this District.

<u>**Administrative Procedures**</u>

10. Plaintiff filed a charge with the EEOC based on disability discrimination and retaliation on May 10, 2018.

11. The EEOC gave Plaintiff a Right to Sue letter on November 29, 2018.

12. Plaintiff has satisfied all jurisdictional requirements set forth by the EEOC for bringing federal causes of action as addressed below.

<u>**COMMON FACTUAL ALLEGATIONS**</u>

13. Plaintiff was hired by Defendant DTC as transit police officer on or around May 23, 2016.

14. On April 8, 2017, due to repeated harassment from a supervisor, Sergeant Edwards, Plaintiff filed an internal complaint with another supervisor, Lieutenant William Hart.

15.     Plaintiff was never interviewed or notified regarding his internal complaint and to the best of his knowledge it was ignored by Defendants.

16.     On May 5, 2017, Plaintiff was transferred to a restricted work detail and would now report to Sergeant Edwards.

17.     Plaintiff requested vacation time he had remaining in May, June and September, specifically the latter request related to his desire to attend his Great Uncle's funeral.

18.     Plaintiff's requests for vacation time were all denied, and although the decision to award vacation time is based on seniority, various other similarly-situated officers with less seniority than Plaintiff were given vacation time over the period Plaintiff requested it.

19.     The decision to deny Plaintiff the requested vacation regarding his Great Uncle's funeral was made by Sergeant Edwards as well as the other concurrent decision to deny his vacation requests.

20.     On August 11, 2017, Plaintiff and two other officers were eating breakfast at Greektown Casino while they were on their assigned route to collect certain cash boxes; this conduct was not out of the ordinary.

21.     Sergeant Edwards initiated the investigation into this alleged violation based on an anonymous picture he received from an employee of Greektown Casino.

22.     On August 30, 2017, Plaintiff was sent a questionnaire from Sergeant Edwards involving potential work rule violations relating to the Greektown incident.

23.     On September 6, 2017, Plaintiff received an "insubordination" reprimand regarding his attendance at his Great Uncle's funeral from Sergeant Edwards.

24.     This insubordination reprimand was later dismissed.

25.     Plaintiff tore his meniscus while not on duty on or around September 13, 2017, wherein Plaintiff was required to undergo physical therapy three days per week thereafter.

26.     Defendant hired a new HR Director, Defendant Brenda Walker, as its HR Director in September of 2017, effectively replacing Parnell Williams.

27.     On December 24, 2017, Plaintiff received a letter from Defendant's HR Manager, Brenda Walker, stating that he had make a payment of $176.58 to continue his insurance coverage, and that failure to do so would result in his medical insurance benefits.

28.     Plaintiff paid this money to DTC on or around December 29, 2017.

29.     Plaintiff received a latter in early January stating that because of his recent termination his insurance had been cancelled; yet Plaintiff was still employed and instead was on medical leave.

30.     Plaintiff was scheduled to have knee surgery to remedy his meniscus injury on January 9, 2018, but due to his insurance being cancelled, Plaintiff postponed the meniscus surgery until March 10, 2018.

31.     Following his surgery, Plaintiff submitted a request for an accommodation to Defendant's HR Department from his doctor on or around April 17, 2018 based on his recovering knee that Plaintiff required light duty with restrictions of no walking or standing for more than 30 minutes in any one hour of work.

32.     Plaintiff was never notified or asked about the extent of his injury and/or need for accommodation, but instead received an email hours later from Brenda Walker stating that Defendant cannot accommodate his request because "we do not have light duty work available."

33.     Plaintiff was aware of other individuals who were given either restricted duty and/or light duty assignments around that same time.

34.     Given this discriminatory treatment, Plaintiff filed an EEOC charge of discrimination on May 10, 2018, wherein he alleged disability discrimination and retaliation.

35.     Defendant DTC was notified the same day of this Charge.

36.     Defendant's HR Director, Brenda Walker, sent Plaintiff a letter of termination from his employment with Defendant on May 17, 2018, wherein it was alleged that he violated an employee procedure in falsifying time records arising

6

out of the August 11, 2017 Greek Town incident and was a Progressive Discipline Level V offense.

37.     Aside from the initial questionnaire weeks after the Greektown incident, Plaintiff never heard anything pertaining to this investigation.

38.     One of the officers with Plaintiff that day at Greektown, Officer Richard Lindquist, testified at a different employee's Unemployment Hearing that he was never disciplined or interviewed regarding the events at Greektown that day.

39.     Following his termination, Plaintiff applied for unemployment benefits, which Defendant DTC affirmatively contested and Plaintiff was denied on or around July 9, 2018.

40.     Plaintiff's basis for seeking unemployment benefits and appealing after he was denied arose out of a lack of evidence regarding his alleged misconduct on the Greektown cameras; i.e. the basis for his termination and/or it being a violation for him to be present there.

41.     Defendant DTC provided no explanation for why Plaintiff was being terminated for an event that took place ten months before despite that being in contravention of Defendants' discipline policies/procedures.

42.     At another employee's unemployment benefits hearing, the former HR Director, Pernell Williams, who was replaced by Brenda Walker in September

of 2017, stated that there was never an investigation ordered into the Greektown incident.

43.     After appealing Defendant's denial of his unemployment benefits, Plaintiff was granted unemployment benefits on or around September 20, 2018 by an Administrative Law Judge based on the lack of evidentiary support for its position that Plaintiff engaged in misconduct.

<u>COUNT I</u>
<u>VIOLATION OF 42 U.S.C § 12101, *et seq.*, OF THE AMERICANS WITH DISABILITIES ACT—DISCRIMINATION AND/OR FAILURE TO ACCOMMODATE</u>

44.     Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 43, as if fully set forth herein.

45.     Title I of the Americans with Disabilities Act, 42 U.S.C. § 12112, prohibits discrimination against any qualified individual on the basis of disability in regard to job application procedures, hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

46.     42 U.S.C. § 12111(8) defines qualified individual to mean an individual who with or without reasonable accommodation can perform the essential functions of the employment position that such individual holds or desires.

47.     At all relevant times, Plaintiff was a qualified individual within the meaning of 42 U.S.C. § 12111(8).

48.     Plaintiff could perform his job duties with, or without, a reasonable accommodation.

49.     Plaintiff's meniscus injury was or was regarded as limiting, the substantial major life activities of performing manual tasks, walking, standing, bending and working,

50.     42 U.S.C. § 12112(b) defines discrimination against a qualified individual on the basis of disability. The definition of discrimination includes the failure to reasonably accommodate a disabled individual. It includes the following:

> a.     42 U.S.C. § 12112(b)(3) includes in the definition of discrimination utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability.
>
> b.     42 U.S.C. § 12112(b)(5) includes in the definition of discrimination the failure to reasonably accommodate a qualified individual with a disability.
>
> c.     42 U.S.C. § 12112(b)(6) includes in the definition of discrimination the use of qualification standards, employment tests, or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with a disability unless it is shown to be job related for the position in question and consistent with business necessity.

51.     The ADA also requires an individualized inquiry into each individuals specific situation and need for an accommodation.

52.     Defendant violated the ADA when it discriminated against Plaintiff based on his disability and request for accommodation by failing to accommodate his reasonable requests for an accommodation.

53.     Defendant discriminated against Plaintiff by enforcing its policies regarding requested accommodations and denying Plaintiff an accommodation lacking either a sufficient reason or engaging in any interactive process.

54.     By ignoring ongoing discrimination and enforcing discriminatory policies against Plaintiff and other similarly-situated employees, Defendant disregarded Plaintiff's basic rights under the United States government and the Americans with Disabilities Act.

55.     Defendant's actions and policies in discriminating against Plaintiff based on his disability and failing to accommodate Plaintiff were conducted with malice or reckless indifference to Plaintiff's federally protected rights.

56.     As a direct and proximate result of Defendant's unlawful action, Plaintiff has sustained injuries and damages, including, but not limited to: potential loss of earning capacity, loss of career and employment opportunities, loss of employee benefits, loss of promotional opportunities, humiliation and embarrassment, mental and emotional distress, and loss of everyday pleasures of everyday life.

57.     Pursuant to the ADA, Defendant is liable to Plaintiff for all damages allowed under federal law. To the extent that the damages allowable and/or recoverable are deemed insufficient to fully compensate Plaintiff and/or to punish or deter Defendant, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.

WHEREFORE, Plaintiff Thomas Price respectfully requests that this Honorable Court enter judgment in his favor and against Defendant, Detroit Transportation Corporation, including but not limited to compensatory damages in whatever amount he is found to be entitled, exemplary damages commensurate with the wrong and Defendant's ability to pay, and an award of his fair and reasonable attorney fees, cost of litigation, and interest.

**COUNT II**
**VIOLATION OF 42 USC § 12101, *et seq.* - THE AMERICANS WITH DISABILITIES ACT – RETALIATION**

58.     Plaintiff reasserts and realleges each and every allegation contained in paragraphs 1 through 57 of this Complaint, as if fully set forth herein, paragraph by paragraph, word for word.

59.     The ADA, pursuant to 42 USC §12203, prohibits retaliation against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

60.     Defendant owed Plaintiff a duty not to retaliate against him with respect to employment, promotional opportunities, compensation, post-termination rights or other conditions or privileges of employment on the basis of his protected activities.

61.    Plaintiff engaged in protected activity when he filed a disability charge of discrimination with the EEOC and by requesting an accommodation with his employer.

62.    Defendant had knowledge of Plaintiff's protected activities as set forth in the preceding paragraphs.

63.    Had Plaintiff not filed a charge of discrimination, he would not have been subjected to adverse treatment from Defendant.

64.    Defendant's actions in retaliating against Plaintiff based on his protected activity were conducted with malice or reckless indifference to Plaintiff's federally protected rights.

65.    Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal retaliation against its employees.

66.    Plaintiff was terminated shortly after he engaged in the above-referenced protected activities.

67.    Defendant, by and through its agents, servants, and/or employees, subsequently took adverse, retaliatory actions against Plaintiff including, but not limited to, denying Plaintiff conditions, terms, opportunities, and privileges provided to other employees of Defendant along with terminating his employment.

68.    Defendant and its agents, servants and/or employees' actions were intentional with reckless indifference to Plaintiff's rights and sensibilities.

69.     As a direct and proximate result of Defendants' unlawful action, Plaintiff has sustained injuries and damages, including, but not limited to: potential loss of earning capacity, loss of career and employment opportunities, loss of employee benefits, loss of promotional opportunities, humiliation and embarrassment, mental and emotional distress, and loss of everyday pleasures of everyday life.

70.     Pursuant to the ADA, Defendants are liable to Plaintiff for all damages allowed under federal law. To the extent that the damages allowable and/or recoverable are deemed insufficient to fully compensate Plaintiff and/or to punish or deter Defendant, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.

WHEREFORE, Plaintiff Thomas Price, respectfully requests that this Honorable Court enter judgment in his favor and against Defendant, Detroit Transportation Corporation, including but not limited to compensatory damages in whatever amount he is found to be entitled, exemplary damages commensurate with the wrong and Defendant's ability to pay, and an award of his fair and reasonable attorney fees, cost of litigation, and interest.

## COUNT III
## VIOLATION OF M.C.L. § 37.1101, *et seq*., THE MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT — DISCRIMINATION AND FAILURE TO ACCOMMODATE AS TO DEFENDANTS

71.     Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 7o, as if fully set forth herein.

72.     The Michigan Persons with Disabilities Civil Rights Act, M.C.L. § 37.1101 *et seq*., ("PWDCRA") prohibits the discharge or otherwise discrimination against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a disability or genetic information that is unrelated to the individual's ability to perform the duties of a particular job or position.

73.     The PWDCRA also requires an employer to "accommodate a person with a disability for purposes of employment … unless the person demonstrates that the accommodation would impose an undue hardship." M.C.L. § 37.1102.

74.     A disability is "[a] determinable physical or mental characteristic of an individual which may result from disease, injury, congenital conditions of birth, or functional disorder, if the characteristic ... substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position or substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's qualifications for employment or promotion." M.C.L. § 37.1103(d)(i)(A).

75.     At all relevant times, Plaintiff was a qualified individual with a disability within the meaning of the PWDCRA.  Specifically, Plaintiff has a physical impairment that substantially limits one or more of his major life

activities, has a record of the impairment, and/or Defendant regarded Plaintiff as having such an impairment.

76.    Plaintiff's meniscus injury was or was regarded as limiting the substantial major life activities of performing manual tasks, walking, standing, lifting, bending, and working.

77.    Plaintiff is qualified for the position and could perform the essential job duties of his position with or without a reasonable accommodation; a short-term, temporary, light duty assignment.

78.    Plaintiff requested a reasonable accommodation and was denied the same a day later without any explanation.

79.    Even though Defendant had available accommodations (light-duty assignments) that were not unduly burdensome to Defendant, Defendant refused to accommodate Plaintiff's request for a reasonable accommodation.

80.    Defendant violated the PWDCRA when it discriminated against Plaintiff on the basis of his disability by failing to accommodate his reasonable requests for an accommodation.

81.    Defendant treated Plaintiff, because of his disability, more harshly than it treated other similarly-situated employees for the same conduct.

82.    Defendant's reason for terminating Plaintiff was merely pretext given that an individual who did not request an accommodation was not disciplined for the same Greektown conduct.

83.     Plaintiff is under the information and belief that Defendant, through its agents, representatives, and employees, treated Plaintiff differently from similarly situated non-disabled employees, in the terms and conditions of his employment by manufacturing a basis for terminating him.

84.     Defendant's actions were intentional and in disregard of Plaintiff's rights and sensibilities.

85.     Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including disability discrimination.

86.     Defendant did not engage in any interactive process to attempt to accommodate Plaintiff, but instead terminated him shortly thereafter.

87.     Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including the PWDCRA.

88.     As a direct and proximate result of Defendant's unlawful action, Plaintiff has sustained injuries and damages, including, but not limited to: potential loss of earning capacity, loss of career and employment opportunities, loss of employee benefits, humiliation and embarrassment, mental and emotional distress, and loss of everyday pleasures of everyday life.

89.     Pursuant to the PWDCRA, Defendants are liable to Plaintiff for all damages allowed under state law.  To the extent that the damages allowable and/or

recoverable are deemed insufficient to fully compensate Plaintiff and/or to punish or deter the Defendants, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, jointly and severally, in an amount in excess of $25,000.00, plus costs, interest, and attorney fees so wrongfully incurred, as the Court deems just.

## COUNT IV – RETALIATION – VIOLATION OF THE PERSON WITH DISABILITIES CIVIL RIGHTS ACT, M.C.L. § 37.1101 *et seq.* AS TO ALL DEFENDANTS

90.     Plaintiff hereby restate and re-allege the allegations contained in paragraphs 1 through 89 above, as though fully set forth herein.

91.     The Michigan Persons with Disabilities Civil Rights Act, M.C.L. § 37.1602(a) ("PWDCRA") prohibits retaliation against any individual because that person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in any investigation … under this act.

92.     At all material times, Plaintiff is and has been an employee of Defendants covered by and within the meaning of the

93.     As employers within the meaning of the PWDCRA, Defendants owed Plaintiff a duty not to retaliate against him with respect to his employment, promotional opportunities, compensation, post-termination rights, or other

conditions or privileges of employment on the basis of reporting harassment and discrimination.

94.    Filing a charge of discrimination is protected activity for purposes of the PWDCRA.

95.    Plaintiff engaged in conduct protected under the PWDCRA when he filed a charge of disability discrimination with the EEOC and concurrent Michigan Department of Civil Rights.

96.    Defendants had knowledge of Plaintiff's protected activities as set forth in the preceding paragraphs.

97.    Defendants by and through their agents, servants, and/or employees, subsequently took adverse, retaliatory action against Plaintiff including, but not limited to, denying Plaintiff conditions, terms, opportunities, and privileges provided to other employees of Defendant, isolating Plaintiff, and/or terminating him for a reason found to be untrue.

98.    After Plaintiff's termination, Defendants affirmatively contested Plaintiff's attempt to receive rightfully-owed unemployment benefits, despite knowing that he was entitled to said benefits.

99.    Defendants' affirmative contestation of Plaintiff's attempt to receive unemployment benefits was in retaliation for him filing his charge of discrimination.

100.   Plaintiff was properly granted unemployment benefits given the lack of merit in Defendant's reasoning for terminating him.

101.   Plaintiff was subjected to retaliatory acts by Defendants and their agents, servants and/or employees in retaliation for his filing a charge of discrimination.

102.   Defendants and their agents, servants and/or employees' actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

103.   As a direct and proximate result of Defendant's unlawful actions and retaliations against Plaintiff as described herein, Plaintiff has suffered injuries and damages, including, but not limited to, potential loss of earnings and earning capacity, loss of career opportunities, loss of reputation and esteem in the community, mental and emotional distress, and loss of the ordinary pleasures of life.

**WHEREFORE**, Plaintiff Thomas Price respectfully requests that this Court enter a judgment against Defendants in an amount in excess of $25,000.00, together with interest, costs, and reasonable attorney fees, and grant further such relief as this Court deems fair and just under the circumstances.

## COUNT V – VIOLATION OF
## THE ELLIOTT-LARSEN CIVIL RIGHTS ACT,
## M.C.L. § 37.2101 *et seq*. – RETALIATION

104.   Plaintiff hereby restate and re-allege the allegations contained in paragraphs 1 through 103 above, as though fully set forth herein.

105.   The Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq*. prohibits retaliation against any individual because that person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in any investigation … under this act.

106.   At all material times, Plaintiff is and has been an employee of Defendant covered by and within the meaning of the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq*.

107.   As an employer within the meaning of the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq*., Defendant owed Plaintiff a duty not to retaliate against him with respect to his employment, promotional opportunities, compensation, post-termination rights, or other conditions or privileges of employment on the basis of reporting harassment and discrimination.

108.   Complaining about, reporting, and/or opposing discriminatory harassment and treatment, or discriminatory policies or patterns of practice is a statutorily protected activity under the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq*.

109.   Plaintiff engaged in conduct protected under the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq*., including, but not limited to, complaining of, reporting, and/or opposing the discriminatory and harassing conduct of the agents, servants, and/or employees of Defendant, specifically his internal harassment complaint of Sergeant Edwards on April 8, 2017.

110.   Defendant had knowledge of Plaintiff's complaints and protected activities as set forth in the preceding paragraphs.

111.   Defendant, by and through its agents, servants, and/or employees, subsequently took adverse, retaliatory action against Plaintiff including, but not limited to, denying Plaintiff conditions, terms, opportunities, and privileges provided to other employees of Defendant, isolating Plaintiff, and/or making or permitting Plaintiff's work environment to remain unbearable.

112.   Defendant affirmatively contested Plaintiff's attempt to receive rightfully-owed unemployment benefits, despite knowing that he was entitled to said benefits.

113.   Plaintiff was subjected to continual harassment and other retaliatory acts by Defendant and its agents, servants and/or employees in retaliation for her opposition to civil rights violations and having complained about the harassment described herein, in violation of the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101 *et seq*.

114.   After Plaintiff filed his internal complaint regarding Sergeant Edwards, he was assigned to a position directly under Edwards and received various adverse employment actions effectuated by Edwards, including but not limited to disciplinary investigation(s), the denial of vacation requests.

115.   Defendant and its agents, servants and/or employees' actions were intentional, with reckless indifference to Plaintiff's rights and sensibilities.

116.   As a direct and proximate result of Defendant's unlawful actions and retaliations against Plaintiff as described herein, Plaintiff has suffered injuries and damages, including, but not limited to, potential loss of earnings and earning capacity, loss of career opportunities, loss of reputation and esteem in the community, mental and emotional distress, and loss of the ordinary pleasures of life.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a judgment against Defendant in an amount in excess of $25,000.00, together with interest, costs, and reasonable attorney fees, and grant further such relief as this Court deems fair and just under the circumstances.

Respectfully Submitted,

THE RASOR LAW FIRM, PLLC

*/s/ Andrew J. Laurila*
ANDREW J. LAURILA (P78880)
Attorney for Plaintiff
201 E. 4th Street
Royal Oak, MI 48067

Dated: February 27, 2019

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS PRICE,

      Plaintiff,                                    Civil Action No.:
                                                   Honorable

v

DETROIT TRANPORTATION
CORPORATION,

      Defendants.

_____

JAMES B. RASOR  (P 43476)
ANDREW J. LAURILA  (P 78880)
Rasor Law Firm, PLLC
Attorneys for Plaintiff
201 E. Fourth Street
Royal Oak, MI  48067
248/543-9000 // 248/543-9050 fax
_____

**<u>RELIANCE ON JURY DEMAND</u>**

      NOW COMES Plaintiff, THOMAS PRICE, by and through his attorneys, Rasor Law

Firm, PLLC, by ANDREW J. LAURILA, and hereby respectfully relies upon the jury demand

previously filed in the within cause of action.

                              THE RASOR LAW FIRM, PLLC

                              */s/ Andrew J. Laurila*
                              ANDREW J. LAURILA (P78880)
                              Attorney for Plaintiff
                              201 E. 4th Street
                              Royal Oak, MI 48067

Dated: February 27, 2019