UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS PRICE,

    Plaintiff,

v.

                      Case No. 19-CV-10590

                      HON. DENISE PAGE HOOD

DETROIT TRANSPORTATION
CORPORATION,

    Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [13]

**BACKGROUND**

On February 27, 2019, Plaintiff Thomas Price ("Price") filed a Complaint against Defendant Detroit Transportation Corporation (hereinafter "DTC") alleging that DTC violated his rights under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 (Counts I-II), the Michigan Persons with Disabilities Civil Rights Act, M.C.L. § 37.1101 et seq., ("PWDCRA") (Counts III-IV), and the Elliott-Larsen Civil Rights Act ("ELCRA"), MCL § 37.2202 (Count V). (ECF No. 1). On December 09, 2020, DTC filed a Motion for Summary Judgment. (ECF No. 13). Price filed his Response on January 20, 2021. (ECF No. 19). DTC filed its Reply to the response on February 10, 2021. (ECF No. 22). A hearing was held on the matter.

1

The facts as alleged by Price are as follows. Price was hired by DTC as transit police officer on or around May 23, 2016. (ECF No. 1, PageID.3). On April 8, 2017, due to harassment from a supervisor, Price filed an internal complaint with another supervisor. (*Id.*) Later, Price requested vacation time he had remaining in May, June and September and DTC denied each request. (*Id.,* PageID.4). On August 11, 2017, while on duty to collect cash boxes at the Greektown Casino, the Plaintiff and two other officers stopped to eat breakfast. (*Id.*) DTC received a picture of Price eating breakfast and launched an investigation into whether this conduct violated its policies. (*Id.*)

In March 2018, Price had knee surgery. Pursuant to his doctor's orders, he requested DTC to assign him light duty work with restrictions of no walking or standing for more than 30 minutes in any one hour of work. (*Id.*, PageID.6). DTC was unable to accommodate this request because there was no light duty work available for the Plaintiff. (*Id.*) Following the denial of his request, on May 10, 2018, Price filed an EEOC charge of discrimination, alleging disability discrimination and retaliation. (*Id.*) One week later, DTC terminated Price for falsifying time records based on the August 2017 Greek Town incident. (*Id.*, PageID.7). Price's violation of employee procedures was a Progressive Discipline Level V offense. (*Id.*)

On or around July 9, 2018, following his termination, Price was denied unemployment benefits. (*Id.*) DTC contested Price's unemployment benefits

2

because of the Greektown misconduct. (*Id.*) However, Price appealed the denial of his unemployment benefits. (*Id.*, PageID.7). And on or around September 20, 2018, an Administrative Law Judge granted Price's unemployment benefits based on a lack of evidentiary support for DTC's position that Price engaged in misconduct at the Greektown Casino in August 2017. (*Id.*)

Price argues that his termination was a discriminatory and retaliatory action taken against him because of his requests for accommodation after knee surgery, the denial of his leave requests after reporting internal harassment, and DTC contesting his unemployment benefits after his termination. Price seeks monetary and nonmonetary compensatory damages, exemplary and punitive damages (*Id.*, PageID.19).

I. ANALYSIS

A. Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could

3

return a verdict for the nonmoving party." *Id.* Although the court must view admissible evidence in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

### B. Claims under the ADA and PWDCRA

Price alleges that he was a qualified individual under the ADA after his knee surgery and that DTC's denial of an accommodation constituted discrimination against a disabled person. Price alleges that DTC had available accommodations he was eligible for that were not unduly burdensome to DTC. DTC argues that Price was not a qualified individual under the ADA because he was unable to perform

4

essential functions of his transit police officer ("TPO") job. The Court agrees with DTC.

In order to establish a prima facie case for failure to accommodate, a plaintiff must show that: "(1) he is disabled within the meaning of the Act; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) his employer knew or had reason to know about his disability; (4) he requested an accommodation; and (5) the employer failed to provide the necessary accommodation." *Johnson v. Cleveland City School Dist.*, 443 Fed. App'x 974, 982-93 (6th Cir. 2011). "Once a plaintiff establishes a prima facie case, the burden shifts to the employer to demonstrate that any particular accommodation would impose an undue hardship on the employer." *Id*. at 983.

"The [ADA] defines 'qualified individual' as 'an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" *Michael v. City of Troy Police Dep't*, 808 F.3d 304, 307 (6th Cir. 2015). "A disabled employee who claims that he or she is otherwise qualified with a reasonable accommodation 'bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable.'" *Hedrick v. Western Reserve Care System*, 355 F.3d 444, 457 (6th Cir. 2004).

5

The PWDCRA "substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally...resolve the plaintiff's PWDCRA claim." *Donald v. Sybra, Inc.,* 667 F.3d 757, 763-64 (6th Cir. 2012) *quoting Cotter v. Ajilon Servs., Inc.,* 287 F.3d 593, 598 (6th Cir. 2002). The standard for a PWDCRA claim is identical in this instance - when the employee's disability is related to the ability to perform the duties of employment, he is not protected under PWDCRA. *Collins v. Blue Cross Blue Shield of Mich.*, 228 Mich. App. 560 (1998). Therefore, a plaintiff alleging a PWDCRA violation "must show that he is able, with or without accommodation, to perform these [essential] functions; otherwise, he may not proceed on a claim under" the PWDCRA. *Peden v. City of Detroit,* 470 Mich. 195, 205-206 (2004).

In the present case, the only prong in dispute is whether Price was qualified for the TPO position, with or without reasonable accommodations. Price's doctor's order limited him to "no walking or standing for more than 30 minutes in any one hour of work." (ECF No. 1, PageID.6). With this note, Price requested only "light duty" work. DTC argues that due to the size of its department, light duty work was unavailable for transit officers that could not walk or stand for more than 30 minutes. Price further argues that DTC should have put forth more effort in finding him an accommodation but does not provide facts as to how his request for light duty work was objectively reasonable considering the TPO job requirements and his limited

range of motion. The Court grants DTC's request for summary judgment on Price's ADA and PWDCRA claims (Counts I and III).

### C. Retaliation Claims Under the ADA or PWDCRA

Price claims DTC retaliated against him after he filed his disability discrimination and harassment complaints. Under both Title VII and the ELCRA, a "plaintiff bringing a[n] ... employment discrimination claim must present either direct evidence of discrimination, or circumstantial evidence that allows for an inference of discriminatory treatment." *Reeder v. City of Wayne*, 177 F.Supp.3d 1059, 1079 (E.D. Mich. 2016) (citing *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003) ). Price has not argued that there is any direct evidence of retaliation, and only attempts to demonstrate the existence of circumstantial evidence.

"To establish a prima facie case of retaliation, Plaintiff has to show (1) he engaged in activity protected by the ADA, (2) Defendant knew he engaged in this activity, (3) Defendant subjected him to an adverse employment action, and (4) a causal connection exists between the protected activity and the adverse employment action." *Falcone v. City of Warren*, 581 F. Supp. 2d 841, 846 (E.D. Mich. 2008); *Clark v. City of Dublin, Ohio*, 178 F. App'x 522, 525 (6th Cir. 2006). This court has found that short-term, temporary limitations on major life activities do not constitute disabilities under the ADA. *Rosteutcher v. MidMichigan Physicians Grp.*, 332 F. Supp. 2d 1049, 1059 (E.D. Mich. 2004).

7

If a plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment action against the plaintiff. *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003); *McDonnell Douglas*, 411 U.S. at 805.

Once the defendant offers a legitimate, non-discriminatory reason for its conduct, the burden shifts back to the plaintiff to demonstrate that the defendant's stated basis for the adverse employment action is a pretext designed to mask discrimination. *Texas Dept. Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *McDonnell Douglas*, 411 U.S. at 805. A plaintiff can establish pretext by producing evidence sufficient for a jury to reasonably reject the defendant's explanation and infer that the defendant intentionally discriminated against the plaintiff. *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000) ("A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct"). Again, the PWDCRA has "substantially similar factors" as the ADA, thus for purposes of these factors' analysis, they can be treated the same. *Aldini v. Kroger Co. of Michigan*, 2014 WL 7139956, *13 (E.D. Mich. 2014).

Price alleges three distinct casual connections to his termination: The first is following his meniscus injury, he took a medical disability leave of absence in

8

September 2017. The second activity was when he returned to a healthy enough status, Price requested an accommodation in the form of light duty on April 17, 2018. The third activity was when he filed an EEOC charge on May 10, 2018. Price was terminated eight days later for the Greektown incident which had occurred months prior in August 2017. Price received notice in December 2017 that his health insurance benefits were canceled because he was terminated. Yet, the actual termination letter came much later in May 2018, after the time Price filed his EEOC complaint.

Price argues that the unexplained delay from DTC's report in August 2017 that Price should be terminated, until the actual notice of termination in May 2018 after he filed an EEOC charge, establishes causation in that DTC departed from its investigatory policies. After Price went on medical leave in September 2017, a protected activity, he was told by the Human Resources Manager Parnell Williams that there would not be an investigation into the Greektown incident, yet unbeknownst to Price, the investigation continued. Price received a letter on December 19, 2017, that his benefits were canceled because he had been "terminated" even though he had yet to receive such a notice. Also, it was on March 23, 2018, when Kristy Cross produced the recommendation for Price's termination, even though Price did not have knowledge of such at that time.

9

The second causal connection identified by Price is when he requested accommodation on April 17, 2018, which is a protected activity. Price at this time did not know that the Greektown incident was still an open investigation. It could be inferred that DTC's ongoing investigation was also because of Price's request for accommodation.

Price then filed an EEOC charge on May 10, 2018, another activity protected by the ADA. DTC knew Price engaged in that activity and terminated his employment about a week after the filing of the EEOC complaint. DTC has not provided any evidence that until this date, DTC's General Manager and the decisionmaker Barbara Hansen, had acted on the recommendation to terminate Price, even though Price had no knowledge of the ongoing investigation.

The Court finds that there is a genuine dispute regarding the causal connection between Price taking medical leave, his request for accommodation and the filing of his EEOC claim, and subsequent termination. The inconsistent explanations by DTC as to why the investigation took several months, the termination of his medical benefits without notice, and the termination after all these protected ADA events shows Price has shown that he meets the proof threshold for retaliation.

### D. Pretext

If a plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse

employment action against the plaintiff. *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003); *McDonnell Douglas*, 411 U.S. at 805. Once the defendant offers a legitimate, non-discriminatory reason for its conduct, the burden shifts back to the plaintiff to demonstrate that the defendant's stated basis for the adverse employment action is a pretext designed to mask discrimination. *Texas Dep't Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *McDonnell Douglas*, 411 U.S. at 805. A plaintiff can establish pretext by producing evidence sufficient for a jury to reasonably reject the defendant's explanation and infer that the defendant intentionally discriminated against the plaintiff. *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000) ("A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct"). Again, the PWDCRA has "substantially similar factors" as the ADA, thus for purposes of these factors' analysis, they can be treated the same. *Aldini v. Kroger Co. of Michigan*, 2014 WL 7139956, *13 (E.D. Mich. 2014).]

    The Court finds that a reasonable factfinder could determine that retaliation did occur. The Court further finds that there are genuine issues of material fact that DTC's reason for the delay of the investigation is mere pretext. DTC's explanations for the delay varies. The reason for the Greektown investigation in that Price falsified his time log, yet there is also evidence that other employees took meals at

Greektown without so noting in their timecards. The Court denies DTC's request for summary judgment on Price's ADA, PWDCRA, and ELCRA retaliation claims.

## II. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendant Detroit Transportation Corporation's Motion for Summary Judgment **(ECF No. 13)** is **GRANTED IN PART** and **DENIED IN PART**. The discrimination claims in Counts I (ADA) and III (PWDCRA) are DISMISSED. The retaliation claims in Counts II (ADA), III (PWDCRA) and IV (ELCRA) remain.

s/Denise Page Hood
DENISE PAGE HOOD
United States District Judge

DATED: September 30, 2024